William Ridgway, Appellee, v. Ocea Crum, Appellant.
Gen. No. 9,726.

Opinion filed March 7, 1951. Rehearing denied April 30, 1951. Released for publication April 30, 1951.

SNELL & SEYFRIT and HEMPHILL & KELSEY, all of Carlinville, for appellant.

RINAKER, SMITH & HEBRON, of Carlinville, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

This case involves an appeal from a judgment for $3,300 and costs in favor of the plaintiff appellee, William Ridgway, and against the defendant appellant, Ocea Crum, entered in the circuit court of Macoupin county, on the verdict of a jury. The case was brought by plaintiff appellee against defendant appellant, to

recover for personal injuries resulting from an assault and battery alleged to have been committed by the defendant appellant.

On May 4, 1949, plaintiff appellee, William Ridgway, filed in the circuit court of Macoupin county, a complaint in two counts. Count I was a complaint for an injunction concerning the right of way over a road where a barricade had been placed, and Count II was a count at law, which is the basis of this suit, and it was a complaint for the recovery of damages for the assault and battery alleged to have been committed by the defendant appellant, Ocea Crum.

Paragraph 1 of Count II of the complaint charges that on the 28th day of April, A. D. 1949, in Section Five (5) of Township Eleven (11) North, Range Eight (8) West of the Third Principal Meridian, Macoupin county, Illinois, and being South Palmyra Township in said county and State, the said defendant, Ocea Crum, and certain other persons assaulted the plaintiff appellee by striking him, beating and kicking him about the face and body, by throwing him to the ground and by maliciously striking, kicking and beating the plaintiff appellee about the face, head and body while he was lying prostrate upon the ground.

Paragraph 2 describes the injuries sustained.

Paragraph 3 alleges damages in the sum of $10,000 and prays judgment.

The answer of the defendant denies each and every allegation in each paragraph of said Count II.

A decree was entered on Count I of the complaint on July 14, 1949.

The case under Count II being the case at bar, came on for trial on February 23, 1950.

At the conclusion of plaintiff appellee's evidence the defendant appellant moved to exclude all evidence of any injuries except the injuries to the left arm and shoulder for the reason that there was no showing of

14

any connection between such injuries and any act of the defendant appellant, and that motion was denied.

At the conclusion of all the evidence, defendant appellant moved the court to instruct the jury to return a verdict in favor of the defendant appellant and tendered an instruction. The motion was denied and the instruction refused.

The jury returned a verdict finding the defendant appellant guilty and assessing plaintiff appellee's damages at the sum of $3,300, and judgment was entered on the verdict for said amount.

The defendant appellant filed a motion for judgment notwithstanding the verdict and a motion for a new trial. Both motions were denied and this appeal followed.

The evidence produced on the trial revealed that on April 28, 1949, the day of the alleged assault, plaintiff appellee William Ridgway resided in a small house in the middle of his 180-acre farm in South Palmyra, Macoupin county, Illinois. The tillable land on his farm was north of his house; the roadway from his farm ran north up through a gate on the north line of his farm and across 20 acres of land owned by the defendant appellant, Ocea Crum, to the township road leading into the Village of Palmyra about two miles distant from his house.

At about 10:30 in the morning of the day of the assault, the defendant appellant, Ocea Crum, together with Edward Ridgway, Ivan Crum and Alfred Eldredge, had placed two hedgeposts in front of the William Ridgway gate so that the same could not be opened, and erected a fence further north across the roadway as a barricade, in order to prevent William Ridgway from using the same. About 20 acres of land owned by Ocea Crum lay between the public road and the land owned by William Ridgway, and was a pasture.

15

On March 28, 1949, Ocea Crum leased a half acre of this pasture immediately next to plaintiff appellee's gate and through which the roadway ran, to Edward Ridgway (who had no farm machinery for putting in any crops on said land, but was going to hire someone to plant corn and beans on the leased land). Edward Ridgway was a brother of William Ridgway, and lived in a three-room house owned by Ocea Crum located along the public road near where William Ridgway's roadway joined the same.

For a period of two or three weeks prior to the day in question William Ridgway found at different times, various obstructions in the road used by him to reach the county road, which caused him to carry an axe, a crow-bar and a shovel in the trunk of his car to be used in removing these obstructions. Ocea Crum and others had made threats to beat William Ridgway and had made the statement that they were "laying in wait for him."

William Ridgway left home about one o'clock p. m. on April 28, 1949, after placing a rifle in his car. When he reached the gate he found the posts and the barricade across the roadway crossing the Crum land to the highway on the north. He removed the axe, spade and crow-bar from his car and started to remove the posts obstructing the gate. Ocea Crum and his daughter, Mrs. Lela May Eldredge, who resided a mile and a half from the scene, then appeared, and a conversation ensued between William Ridgway and Ocea Crum, on the details of which witnesses differ. Edward Ridgway, brother of William, and who was not on friendly terms with his brother, came to the scene from his house, an eighth of a mile away. Alfred Eldredge, a son-in-law of Ocea Crum, and Ivan Crum, a nephew of Ocea Crum, who had been plowing in the field about a quarter of a mile from the gate, also appeared on the scene. Within a few minutes after the beginning of

16

the conversation the fight occurred, and William Ridgway received injuries testified to by Dr. Rutherford, consisting of multiple bruises and contusions over the body, bruises on the left chest, front and back, with a broken rib which punctured the lung cavity, an injury to the left shoulder, and bruises on the face and forehead, and minor abrasions and cuts on the scalp.

At the time of the altercation William Ridgway was a man 60 years of age and weighed between 175 and 180 pounds; Ocea Crum was 46 years old, six feet tall and weighed 200 pounds; Edward Ridgway was 67 years of age, was troubled with asthma and weighed 165 pounds; Ivan Crum was a man 24 years old and had spent two years in the military service, and Alfred Eldredge was 26 years old.

The evidence on the part of the plaintiff appellee, William Ridgway, was furnished by his own testimony, and was to the affect that while he was digging around the posts Ocea Crum approached the place on the run and alone, that his daughter, Mrs. Eldredge, and Edward Ridgway arrived a minute or so later; that then Ivan Crum and Alfred Eldredge came running across the pasture; that Ocea Crum stood there and cursed him and grabbed him by the collar with his right hand and grabbed his forearm and twisted it out of joint, and that he then went down and licks were laid over his head by either Ocea Crum, Eldredge or Ivan Crum. That at that time Mrs. Eldredge and Edward Ridgway were coming up the road and somebody kicked him in the side when he was down; that someone also rubbed plaintiff appellee's face and almost put his eyes out. After this altercation he was picked up bodily and pitched over the gate. Lela May Eldredge then went to the car of William Ridgway, opened the door and removed the rifle and gave it to her father, Ocea Crum. William Ridgway then went to his car and went back home. He got into bed, but because he could not

17

breathe he sat up at the table, in much pain. He tried lying down and had difficulty breathing, causing him to sit up in a rocking chair, and was so sitting, wrapped in a blanket when he was found by a Mr. Imel. As Mr. Imel found him there was quite a bit of blood about his head and clothes. He could not walk and had to be carried and appeared to be in a lot of pain.

William Ridgway was hospitalized for 13 or 14 days under the care of Dr. Rutherford. He was a strict bed patient for about a week, during which time he received penicillin every three hours day and night; he suffered a great deal of pain due to his rib and lung injury, and the shoulder injury was still paining him when he last visited Dr. Rutherford on October 3, 1949. The doctor and hospital bills totaled $251 and the ambulance bill was $25, and the cost of putting in his crops for the 1949 farm year was $700.

The evidence on the part of the defendant appellant conflicts sharply with that of the plaintiff appellee, and consists of testimony of the defendant, Ocea Crum, of Ivan Crum, Alfred Eldredge and Edward Ridgway. It was to the effect that Ocea Crum and his daughter, Lela May Eldredge, who the defendant Ocea Crum testified "came as a witness," reached the gate about the same time; that no blows were struck until Edward Ridgway came upon the scene and made some remarks which appeared to provoke William Ridgway, and that William Ridgway then assaulted Edward Ridgway and the two brothers engaged in a fight, during the course of which they fell to the ground among brick-bats, and wrestled and rolled on the ground; that Lela May Eldredge and Ocea Crum then took hold of them and separated them. Then Ivan Crum and Alfred Eldredge arrived, and William Ridgway then assaulted his brother and Ocea Crum with an axe, and that thereupon Ivan Crum and Alfred Eldredge took hold of him and set him over the gate; that Ocea Crum and his daughter, after obtaining the rifle from William Ridg-

18

way's car, left the scene and William Ridgway remained for several minutes, during which time he attempted to remove the barricade, and finally left in his automobile; that the only fight was between William Ridgway and his brother Edward, and the only part that Ocea Crum played in the altercation was the part of a peacemaker.

It is urged by the defendant appellant that the verdict is manifestly against the weight of the evidence; that the evidence did not prove that the defendant appellant and certain other persons assaulted the plaintiff appellee, as alleged in the complaint; that the trial court erred in the giving of certain instructions, and also erred in admitting into evidence a decree of the trial court acknowledging the right of the plaintiff appellee in the roadway over which an argument started, and protecting that right by an injunction order.

 Upon a careful review of the evidence we find no ground to set aside the verdict of the jury. The evidence was conflicting and it was a question for the jury to say whether or not the allegations of the complaint were proven by a preponderance of the evidence. *Blomberg v. McDermaid,* 301 Ill. App. 621; *Nicholls v. Colwell,* 113 Ill. App. 219; *Nusbaum v. Pennsylvania R. R. Co.,* 340 Ill. App. 131. The jury had the opportunity to see and hear the witnesses and to judge whose story was the more worthy of belief. The trial judge also had the same opportunity and denied the defendant appellant's motion for a new trial. The verdict is not so clearly against the weight of the evidence as to justify this court in setting aside the verdict and judgment.

Defendant appellant charges error in the giving of certain instructions. He first questions Instruction Number 6, which is as follows:

"The court instructs you, the jury, that if you believe, from a preponderance of all the evidence in this

19

case and under the instructions herewith given, that Ocea Crum and a person or persons present with him, if any, were engaged in the common purpose of unlawfully assaulting the plaintiff, William Ridgway, and that Ocea Crum laid hold of William Ridgway and that those other persons with Ocea Crum, if any, immediately afterwards, in pursuance of said common purpose, struck the said William Ridgway about the face and body and that said striking was done in the presence of Ocea Crum and that Ocea Crum adopted and approved said act of said person or persons in striking William Ridgway, then the jury are instructed that Ocea Crum is as responsible in this act for striking William Ridgway as are those persons who may have committed the actual striking or beating, if any, and is liable for all damages, if any, shown by the preponderance of the evidence to have been sustained by the plaintiff as a result thereof.''

It is urged that this instruction is not supported by any evidence tending to show that Ocea Crum and persons present with him were engaged in the common purpose of unlawfully assaulting William Ridgway, or that William Ridgway was struck by such persons in pursuance of such common purpose, or that Ocea Crum adopted and approved any such striking.

This court is of the opposite opinion. There was sufficient evidence stated briefly elsewhere in this opinion, when considered as a whole by the jury, by which the jury might well come to the conclusion that Ocea Crum and the persons present with him at the time of the altercation in question were acting in unison and were engaged in the common purpose of unlawfully assaulting the plaintiff appellee, and the instruction as given was not erroneous.

Defendant appellant next objects to given Instruction Number 9 submitted on behalf of the plaintiff appellee, reading as follows:

20

"A preponderance of the evidence in a case is not determined alone by the number of witnesses testifying to a particular fact or state of facts. In determining the preponderance or lack of preponderance of the evidence the jury should take into consideration the conduct and demeanor of the several witnesses while testifying, their interest or lack of interest in the result of the trial, if any such have been shown by the evidence, the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved in the trial and from all of these circumstances you should determine whether or not there is a preponderance of the evidence in this case in behalf of the plaintiff, and if the plaintiff has proved his case as charged in the complaint herein, as satisfies or produces conviction in the minds of the jury, then he has proved his case by a preponderance of the evidence,''

for the reason that it fails to advise the jury that it should consider the number of witnesses on opposite sides of the case.

Plaintiff appellee counters with the argument that given Instruction Number 18 offered by the defendant appellant stresses the importance of the jury considering the number of witnesses testifying for the opposite parties, and reads as follows:

"The jury are instructed that the number of credible and impeached witnesses, if any, testifying on the one side or the other, of a disputed point is a proper element for the jury to consider in connection with all other facts and circumstances in evidence, in determining where lies the preponderance of the evidence.''

These instructions taken together fairly and correctly state the law. "... the preponderance of the testimony, in an action for assault or assault and battery, is to be determined from its value and weight,

21

and not from the mere number of the witnesses on one side or the other. The jury may credit plaintiff rather than defendant, although the latter is corroborated by many witnesses. On the other hand, it has been held that, where a large number of witnesses testify on one side, and a few on the other, such disparity in number is a circumstance that may be considered on the question of the credibility of witnesses.'' 6 C. J. S. 785–876.

The remaining contention that the court erroneously admitted the decree into evidence is without merit. The decree admitted as evidence was a decree of the trial court in the same suit entered under Count I of the complaint, after the altercation and before the trial of the phase of the suit under consideration. That decree established the right of the plaintiff appellee to use the roadway over which the argument arose, which showed the jury that the plaintiff appellee was rightfully on his property and his presence there should not have been interfered with by the defendant appellant or anyone else. This right did not begin with the date of the entry of the decree, but was an existing right before that date and on the date of the altercation in question. The decree so found.

The contention that the decree admitted in evidence was not read to the jury could not be taken by the jury to the jury room is likewise without merit. The admission of the decree in evidence and the taking of the same to the jury room without it having been read to the jury could not in any way unduly prejudice the rights of the defendant appellant. A document admitted in evidence does not have to be read to the jury before the same may be taken to the jury room. The jury can and probably did read the exhibit. That is sufficient.

It is our opinion that upon the merits of the case substantial justice has been done, the verdict is not against the manifest weight of the evidence, no

22

error affecting the result of the trial was made by the trial court in its rulings on the admission of evidence or the giving or refusal of instructions to the jury. The judgment of the circuit court of Macoupin county is affirmed.

*Affirmed.*