(No. 35280.—

HOWARD BROWN, Appellant, *vs.* LOUIS ZIMMERMAN *et al.,* Appellees.

*Opinion filed November 18, 1959—Rehearing denied Jan. 18, 1960.*

ROBERT A. SPRECHER, and GALE L. MARCUS, both of Chicago, for appellant.

MYER H. GLADSTONE, of Chicago, and HENRY D. FISHER, of Waukegan, for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Plaintiff-appellant, Howard Brown, sued defendants in the circuit court of Lake County in an action of ejectment to recover possession of a certain lot. Defendants answered plaintiff's complaint and filed a counterclaim which sought to impress the land in question with a constructive trust in favor of defendant Hannah Goldman. Upon a hearing the chancellor found against the plaintiff on his complaint and in favor of defendants on their counterclaim and entered judgment and decree accordingly. Plaintiff appeals directly to this court because a freehold is involved.

For convenience Hannah Goldman, individually and as executrix of the estate of George M. Goldman, deceased, will hereinafter be referred to as defendant. The other defendant, not being involved in the issues in this case, will not be mentioned herein, and the real estate involved herein, for convenience, will be referred to as lot 7.

The persons principally involved in the controversy are the plaintiff Howard Brown, his father Simon Brown, and one George M. Goldman. The transaction out of which the controversy arose originated in March or April of 1951. Goldman died on March 17, 1954, and Simon Brown died sometime in November, 1955. Plaintiff filed his suit on June 8, 1956.

By the pleadings the issue presented in the trial court was whether lot 7 was bought and paid for by the plaintiff or by George Goldman, and, if paid for by Goldman, whether the lower court was correct in impressing the land with a constructive trust in favor of defendant.

The plaintiff testified that in March or April of 1951 he was invited by his father, Simon Brown, to participate in a joint venture whereby four adjoining lots, including said lot 7, were to be purchased and conveyed to a corporation which was to be formed. A building or buildings were to be constructed on the premises for approximately $60,000 and were to be rented to a separate merchandising business to be owned by George Goldman and Simon Brown. Plaintiff was to invest $20,000 for a 30 per cent interest in the land and buildings. Plaintiff testified that his father was to have a 30 per cent interest therein for the time and effort put forth by him in organizing the venture, one John McCann for constructing the buildings at cost was to have a 10 per cent interest, and that George Goldman was to have a 30 per cent interest for investing the balance of the capital required. Simon Brown was the manager of the Kelly Trading Post, a mechandising business of which George Goldman was the proprietor.

The evidence adduced by plaintiff tends to show that thereafter plaintiff delivered a check dated May 22, 1951, payable to the order of Simon Brown for $4,937.50 to his father. The record shows this check was endorsed on May 24, 1951, as follows: "Simon Brown Pay the Exchange National Bank of Chicago, or order Brown's Business Consultants." He had nothing further to do with the acquisition of lot 7. He was not present when the contract for the sale of the lot was drawn or executed. He did not sign the agreement to purchase the lot. His father Simon Brown signed Howard's name to the contract. He had nothing to do with the execution and delivery of the deed vesting the title to lot 7 in his name. All this was handled by his father and his father's lawyer. Plaintiff saw Goldman only once during the entire period of this transaction. It was in March or April of 1951, at Simon Brown's office on Roosevelt Road in Chicago. At this meeting plaintiff testified Goldman said to him "Whatever is O.K. with your dad, is O.K. with me." Thereafter, in reference to the alleged venture all conversations had and all payments claimed to have been made by plaintiff were had and made with his father, Simon Brown.

Plaintiff further testified that from May 22, 1951, to December, 1953, he made seven payments by checks to his father aggregating $19,937.50, on account of his investment in this venture. Some of these checks were never cleared at the bank. In the meantime corporation papers for Kelly Trading Post, Inc., were issued on August 20, 1951, by the Secretary of State of Illinois. Goldman was not interested in completing the organization of the corporation and it was dissolved on January 4, 1954, by decree of the superior court of Cook County for nonpayment of fees and franchise taxes.

In July, 1951, erection of the buildings on the four lots acquired for this purpose was commenced and in due course was completed. The buildings thereafter were occupied by

Goldman doing business as Kelly's Trading Post and by his successors after his death.

The evidence adduced on behalf of defendant tended to prove that plaintiff knew of the continuous occupancy of the buildings by defendant from the time of their completion and voiced no objection; that defendant paid the general taxes on lot 7 as they accrued from the date of its acquisition. Plaintiff admitted on the witness stand that he, at no time, paid any of such taxes. He also admitted that at no time since his alleged investment, did he take any tax deductions in his income tax returns for any capital losses on account of his alleged investment. He did not request rent from anybody, nor did he pay for any insurance on the property. There is evidence that during the period in question a loan account existed between the plaintiff and his father and it appears that the son frequently loaned money to his father by checks payable to him and that often he exchanged his checks for those of his father. There was also proof that a loan account existed between Goldman doing business as Kelly's Trading Post and the elder Brown. Simon Brown, the evidence shows, was the principal figure in a business of his own which he called Brown's Business Associates, also known as Brown's Business Consultants.

Upon his examination on August 14, 1957, under section 60 of the Civil Practice Act, plaintiff testified, among other things, that he was presently the owner of the Gurnee Furniture Warehouse; that he had an interest in the corporation for approximately the last $2\frac{1}{2}$ years; and that his father, Simon Brown, had been and then still was an active stockholder and the general manager of that corporation and so continued to be to the time of death.

It further appears from the evidence offered by defendant that on June 18, 1951, a check was issued to plaintiff in the sum of $5,000 by Kelly's Trading Post. Apparently this check was issued to cover the payment which

Simon Brown had made on account of the purchase of lot 7 ($2,650) and the balance of about $2,500 was credited to the account of Kelly's Trading Post. This check, however, was not paid by the bank because defendant at that time was short of funds. The amount of this check was then credited to the loan account existing between Simon Brown and George Goldman, which at the end of December, 1951, amounted to $78,237.24 in favor of Simon Brown. The witness Bernard Davis, a certified public accountant and auditor of Goldman, testified that this account was later paid in full by a transfer of the hardware inventory of Kelly's Trading Post of the value of $75,000 to Gurnee Furniture, which at the time of the hearing belonged to plaintiff Howard Brown.

The records of George Goldman doing business as the Kelly Trading Post showed no capital investment therein by the plaintiff Howard Brown. The record shows that Simon Brown was the agent of Goldman as general manager of the Kelly Trading Post and also his agent in the matter of the acquisition of the four building lots in question.

Upon this evidence, a judgment and decree were entered wherein the plaintiff was denied a recovery under his complaint in ejectment, and with respect to defendant's amended countercomplaint the court specifically found and decreed, *inter alia:* "That the allegations contained in the said Amended Counter Complaint are substantially true as therein stated and the equities of said cause are with the counter-plaintiff. That Simon Brown, father of Howard Brown, was the agent of George Goldman, doing business as the Kelly Trading Post, and said George Goldman was the sole proprietor of said business. That the said Simon Brown, while the agent for George Goldman, purchased the following described real estate for and on behalf of the said George Goldman for use in connection with the aforesaid business: [Lot 7, aforesaid]; the said Simon

Brown, however, caused title to the said real estate to be placed in the name of his son, Howard Brown, counter-defendant. That there was a confidential relationship between Simon Brown and George Goldman, and that the counter-defendant, Howard Brown, is chargeable with what his father, Simon Brown, did. The Court further finds, therefore, that the burden of proof in this cause shifts to the counter-defendant, Howard Brown, to explain said transaction and he has not maintained the same. The Court finds that the counter-defendant has failed to establish his defense to the Counter Complaint by preponderance of the evidence. The Court therefore finds that a decree should be entered declaring and establishing a constructive trust in and to the above-described real estate in favor of the counter-plaintiff, Hannah Goldman."

A formal decree giving effect to the foregoing provisions was thereupon entered of record.

The first point made by plaintiff-appellant upon this appeal is that he is entitled, as a matter of law, to recover possession of the premises either through ejectment or partition. In the lower court *before* trial, plaintiff had filed a motion to strike defendant's answer and counterclaim which sought to impress the land in question with a constructive trust by urging in said motion that pleading equitable defenses in an ejectment suit was not permissible. The trial court denied the motion. The court did not err in this ruling. Only recently we ruled that a defendant may plead equitable defenses to an action in ejectment. *Stein* v. *Green,* 6 Ill.2d 234; *Ginther* v. *Duginger,* 6 Ill.2d 474.

The reference in the foregoing contention to the right of plaintiff to recover as a matter of law in partition arose *after* proofs were closed, at which time plaintiff moved for leave to file an amended complaint. A complaint in partition was proffered with the motion.

It is apparent from the record that this motion, which sought leave to file a complaint for partition, and introduced

additional parties and an entirely new theory, at the last moment, was without merit. The same may be said of the motion thereafter made by plaintiff for leave to file an amendment to plaintiff's complaint to declare the existence of an equitable mortgage in favor of plaintiff, in which motion plaintiff claimed the amendment sought was to have the proffered pleading conform to the proofs. This motion was also denied by the court and in so doing the trial court did not err. The amendment, in fact, did not conform to the proofs and, being offered after the proofs were closed, came too late. It is the law of this State, as frequently announced by our courts, that, particularly after evidence has been closed, the allowance or refusal of a material amendment is largely in the discretion of the chancellor and will not be disturbed on review except in cases of clear abuse. *McGlaughlin* v. *Pickerel,* 381 Ill. 574; *Moneta* v. *Hoinacki,* 394 Ill. 47.

The evidence clearly shows that Simon Brown had the complete confidence of his principal George Goldman. Simon Brown was his agent in the management of the merchandising business of Kelly's Trading Post, a wholly owned business of George Goldman. He also was Goldman's agent in the matter of acquiring the four lots, including lot 7, upon which the two store buildings were later constructed. He drew large sums of money for his salary. He had a loan account with George Goldman, in which, at times, the balance was in his favor and at other times in favor of Goldman. Anyone reading the record in this case must inevitably reach the conclusion, because of the relationship between these men, that Goldman placed a great deal of trust and confidence in Simon Brown. In these circumstances the purchase of lot 7 and the placing of the title thereto in the plaintiff, Howard Brown, was a palpable abuse of that trust and confidence and fully warranted the finding and decree of the court that plaintiff was holding such title as a constructive trustee in favor of

Hannah Goldman individually and as executor of the estate of George Goldman, deceased. *Kester* v. *Crilly,* 405 Ill. 425; *Suchy* v. *Hajicek,* 364 Ill. 502; 1 I.L.P. 701, Agency, sec. 61.

Finally, aside from the foregoing disposition of the legal points raised, the determination of this case depends largely upon the facts to be found in the record. In such situations the findings and judgment of the trial court, in chancery and nonjury cases, will not be disturbed by the reviewing court, if there is any evidence in the record to support such findings. In *Reese* v. *Laymon,* 2 Ill.2d 614, 624, regarding this subject, we said: "The circuit court, as the trier of fact in this cause, heard the evidence and saw the witnesses, and its findings for plaintiff should not be disturbed by a reviewing court unless manifestly against the weight of the evidence." Where the trial court has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court, and will not disturb the findings unless they are manifestly against the weight of the evidence. *Wynekoop* v. *Wynekoop,* 407 Ill. 219.

We have repeatedly held that a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court, unless the findings are manifestly against the weight of the evidence. Where a cause is heard by a chancellor without a jury, his conclusions on facts are entitled to the same weight as a jury verdict. *Johnson* v. *Fulkerson,* 12 Ill.2d 69; *Eleopoulos* v. *City of Chicago,* 3 Ill.2d 247.

An examination of the record here shows that the judgment and decree in this cause are amply supported by the evidence and substantially free of error. We therefore affirm the judgment and decree.

*Judgment and decree affirmed.*