EVA L. PICKREL, Plaintiff-Appellee, *v.* ROCK RIVER VALLEY HOMES, INC. *et al.,* Defendants-Appellants.

(No. 73-244; )

Third District—April 18, 1974.

Kennard Besse, of Sterling, for appellants.

Bull, Ludens, Potter & Coplan, of Morrison, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

The plaintiff, Eva L. Pickrel, brought suit against John R. Stevens to recover on a note she had purchased which was signed by John R. Stevens and by Jack Pickrel, her husband. She also brought suit against Rock River Valley Homes, Inc., to recover on an indemnity agreement. The cases were tried together pursuant to stipulation. The Circuit Court of Whiteside County, Illinois, rendered judgment in favor of the plaintiff in each case for the full amount claimed, $12,255.55 plus interest and costs. Each of the defendants appealed, and the two cases were consolidated for this appeal.

The defendants contend that the judgment in each of the cases should be reduced by $2,500. Stevens claims that this amount was owed him as his half of the profit Jack Pickrel made in the construction of a restaurant at Sterling, Illinois, through Crane-Rich, Inc., a corporation the two men owned. Rock River, a corporation owned by Stevens, claims that because there was this debt, an earlier version of the indemnity agree-

ment on which suit was brought provided for a $2,500 credit, and that the provision for credit was incorporated by reference into later versions of the indemnity agreement.

The plaintiff maintains that the profit on the restaurant at Sterling was entirely her husband's and was not intended to be shared; that the provision for a $2,500 credit in the indemnity agreement pertained to a motel and other projects which had been or would be undertaken by Rock River, and had no relationship to the restaurant at Sterling built through Crane-Rich; and that the earlier provision for credit was not carried forward into the later indemnity agreements but was abandoned.

The trial court considered the testimony and the documentary evidence and resolved the issues in favor of the plaintiff. We are asked by the defendants to reverse the decision of the trial court on the evidence.

It appears that in August of 1964, Jack Pickrel and Stevens organized Crane-Rich for the purpose of leasing motels as TraveLodge Motels after their construction. Rock River, Stevens' corporation, was to construct the motels. Pickrel was to assist in the financing by lending money directly to Rock River and by helping it to obtain independent financing.

Construction of a TraveLodge Motel at Macomb, Illinois, was undertaken by Rock River, but there was insufficient money to pay contractors. The Union National Bank of Macomb lent money to Rock River to complete the motel, but required, as security, a note signed by Jack Pickrel and Stevens personally and also stock from Jack Pickrel as collateral. Payments were made on the loan until it was reduced to $10,000, but the bank threatened at various times to foreclose on Jack Pickrel's stock, and on March 22, 1971, Eva Pickrel purchased the note held by the bank. Eva Pickrel thereafter filed suit against Stevens on the note, and against Rock River on an indemnity agreement it had given in connection with this transaction.

Meanwhile, in 1966, Jack Pickrel became interested in constructing a restaurant at Sterling, Illinois. He asked Stevens whether he wanted to go into this venture with him, and Stevens declined. Jack Pickrel then asked Stevens whether in the construction of the restaurant he could use the Crane-Rich corporation as a conduit. Stevens said he could, so long as all of the expenses were paid and he, Stevens, incurred no income tax liability. Jack Pickrel then built the restaurant, without any participation by Stevens, and provided written assurances that the profit from the transaction had been reported in the joint income tax return filed by Jack and Eva Pickrel for 1966, and that the tax shown due had been paid.

The testimony regarding these assurances was on some points contradictory. Jack Pickrel testified that he had obtained a letter from his attor-

ney as Stevens had requested, and had given it to Stevens personally, which stated that the attorney had prepared the joint return showing the profit and that the tax had been paid, and which bore the same date, October 6, 1967, as a check for $10,000 Jack Pickrel had received from Rock River which repaid three loans from him in full. Stevens testified that he had not received the letter and had not requested it. Jack Pickrel testified that he had also furnished a statement from a certified public accountant, as requested, for further assurance with respect to taxes. Stevens testified that the purpose of this statement was to show not just that he would have no tax liability, but also the amount of the profit in which he could nevertheless claim a share.

It appears to be Stevens' position that Jack Pickrel's having all the profit from the Sterling restaurant project was the reason for the provision for a $2,500 credit in the indemnity agreement provided by Rock River in connection with the financing of the TraveLodge Motel at Macomb. However, the testimony given to explain the purpose of this provision for credit also involves some difficulty. Jack Pickrel testified that this clause was put in so as to allow Rock River a contribution toward the expense of selling the motel in case it was sold at a loss but he had been advanced profits from other ventures undertaken by Rock River. He added that this arrangement had nothing to do with the restaurant he had constructed at Sterling through Crane-Rich. Stevens did not specifically relate the provision for credit to the Sterling project, in his testimony at the trial, but simply stated that the instrument in which it appeared was for his protection and represented what the parties had agreed.

The financing of Rock River's TraveLodge Motel at Macomb, Illinois, through a bank loan for which Jack Pickrel and Stevens were personally responsible and for which Jack Pickrel had furnished collateral, brought into being a succession of indemnity agreements. The first of them, dated December 12, 1967, read in part as follows: "Anything herein to the contrary notwithstanding the total liability of Rock River Valley Homes, Inc. to indemnify Jack C. Pickrel shall be reduced by Twenty-five Hundred Dollars ($2500.00) and it is agreed that Rock River Valley Homes will prior to the due date on the aforesaid note, negotiate a loan from the Union National Bank of Macomb or some other lending agency for the amount then due on the note of Jack C. Pickrel and John R. Stevens. Said individuals agree to guarantee the payment of the note in order to induce the bank to make a loan to Rock River and Rock River will indemnify the guarantors for any amount they may be required to pay on their guarantees." This 1967 agreement was the only one of the various indemnity agreements which expressly provided for a $2,500

credit, and it contained no clue as to why the provision for a credit was there.

The indemnity agreement dated December 12, 1967, was executed by Jack Pickrel and by Stevens but not by Rock River. An amendment of this agreement, dated May 12, 1968, was likewise executed by Jack Pickrel and Stevens but not Rock River. There is no explanation in the testimony as to why neither the 1967 agreement nor the 1968 amendment of it was executed by the indemnitor, Rock River, except the comment that there wasn't any place for additional signatures.

Another indemnity agreement, dated October 9, 1968, was later prepared and was executed by Rock River, pursuant to authority given by its shareholders and directors. This agreement was an unconditional guaranty that Rock River would pay the note which Jack Pickrel had signed and for the payment of which he had pledged his stock as security, and would hold him harmless from any loss which might result from his having signed the note. No mention of a $2,500 credit was made in this instrument. Jack Pickrel testified that when it was signed nothing was said about Stevens' sharing in the profit from the Sterling restaurant or about any debt. Stevens testified that this agreement was, as he put it, superseded by the previous agreement.

Yet one more indemnity agreement, dated April 1, 1971, was executed by Rock River and Stevens. This was to indemnify the plaintiff, Eva L. Pickrel, who by then had become the owner of the note. This instrument, entitled an assignment of interest and agreement, specifically acknowledged that the note was the obligation of Rock River, and that no money was owed to either Rock River or Stevens by either Jack Pickrel or Eva Pickrel. The following appeared in the margin: "4-16-71 Subject to May 12, 68 agreement Dec. 12, 67 agreement. JRS" The marginal notation was added by Stevens at his office, in Jack Pickrel's presence, after the plaintiff had signed it at her home. The question as to what this marginal notation was intended to add to the apparently clear and complete 1971 agreement was not satisfactorily resolved by the testimony, and lends additional weight to the remark of defendants' counsel at the trial that "the issue of the case is faulty language."

■■ Evidently the trial court came to believe that Stevens was liable for the full amount of the note because he had not proved that Jack Pickrel owed him anything, the restaurant at Sterling having been Jack Pickrel's own project. Evidently the trial court came to believe, also, that Rock River was liable on its indemnity agreement without any reduction because it had not satisfactorily established that the 1967 provision for a credit was carried over into the later agreements. The findings of a trial court on questions of fact in a nonjury case will not be disturbed by a re-

viewing court unless those findings are manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.*, 37 Ill.2d 352, 356; *Brown v. Zimmerman*, 18 Ill.2d 94, 102.) We cannot agree with the defendants' contention that the conclusions of the trial court in these two consolidated cases were manifestly against the weight of the evidence. We must therefore affirm.

The judgment of the Circuit Court of Whiteside County in each of the two consolidated cases is affirmed.

Judgments affirmed.

SCOTT, P. J., and ALLOY, J., concur.