ROBERT M. THORNTON *et al.*, Plaintiffs-Appellees, *v.* RHODUS MOBILE HOMES, INC., Defendant.—(McLEAN COUNTY BANK, Garnishee-Appellant.)

Fourth District    No. 17393

Opinion filed March 11, 1982.

Thomas M. Barger, III, of Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, for appellant.

John N. Stevens, of Arnold, Gesell, Schwulst & Stevens, of Bloomington, for appellees.

JUSTICE WEBBER delivered the opinion of the court:

This appeal raises as its principal issue whether a bank account, commonly called a "reserve account," is subject to garnishment.

Plaintiffs obtained a judgment against defendant Rhodus Mobile Homes, Inc. (Rhodus), and then instituted garnishment proceedings against the garnishee McLean County Bank (Bank). The circuit court of McLean County entered judgment in favor of the plaintiffs and against the Bank, which appeals. We reverse.

Some background, as developed by testimony at the garnishment hearing, is necessary to an understanding of the issue. From what has been said in the briefs before this court and in oral argument, it appears that the reserve account is a common device in general use particularly in the area of financing automobiles and related articles, as in this case mobile homes. It further appears that no set pattern for the creation or administration of such accounts exists, but each lending institution develops its own practices in this regard, although they all share a common purpose.

In the instant case, over a period of years, Rhodus had been financing the sale of its mobile homes with the Bank. The general method was for Rhodus to prepare a retail installment contract for its customer. The contract would then be sold to the Bank at a lower interest rate than that charged by Rhodus to its customer. The difference between the rate called for in the contract and the rate at which the Bank purchased was

placed in a reserve account under Rhodus' name, although only the Bank had access to the reserve account.

The purpose of the reserve account was generally to protect against potential losses. If the buyer of the mobile home were to prepay his contract, or if he were to default, the reserve account was available to cover such situations. Also, since the contracts were sold to the Bank with recourse against Rhodus, the reserve account would likewise be available to cover any actions of Rhodus which might cause a loss and to cover any prepayment or default by the purchaser if Rhodus were no longer in business. If, in the future, there were no outstanding obligations of Rhodus to the Bank, any balance in the reserve account at that time would be payable to Rhodus.

An official of the Bank testified that all reserve accounts in the Bank were handled in the same manner. He further testified that although there were corporate resolutions on file for the general banking business of Rhodus, no such resolutions had ever been obtained for the reserve account. The signature card, introduced into evidence, showed that only four persons, all officers or employees of the Bank and none connected with Rhodus, were authorized to make withdrawals from the reserve account. However, from the time of its institution in 1969 until it was closed in 1980, statements of the reserve account showing deposits and withdrawals were furnished to Rhodus and no objection was ever made.

The official further testified that at the time of service of the garnishment summons funds did exist in the reserve account, but that demand had been made by the Bank of Rhodus under the recourse provisions of the contracts for payment of three contracts which were in default.

While there was some initial distraction in the record concerning the burden of proof and whether there might be some question of offset, the real issue as drawn by the parties is whether the reserve account was subject to any contingency. The order of the trial court finds that the reserve account is the property of the judgment debtor, Rhodus, that there is no "offsetting demand" in the Bank within the meaning of section 8 of the Garnishment Act (Ill. Rev. Stat. 1979, ch. 62, par. 40), and that the reserve account is a proper subject of garnishment proceedings.

It is beyond debate that a liability which is subject to a contingency at the time the answers to garnishment interrogatories are filed is not garnishable. In *Pressed Steel Equipment Co. v. Thornburgh Pressteel Co.* (1923), 228 Ill. App. 1, *aff'd* (1924), 312 Ill. 359, 144 N.E. 6, the garnishee purchased accounts receivable at face, or 100%, value; 77% was paid over in cash and 23% was retained as security. When the account was paid in full, the 23% was then paid over, but until that time the court held it to be contingent, saying:

"We think it is clear, and it is not questioned, that while the purchase price of the accounts was based on their face value yet the contract contemplated that twenty-three per cent thereof should be payable out of the accounts assigned and collected, and when and as collected, and that if not collected no indebtedness would arise for the twenty-three per cent or any portion thereof that those collected would not pay. Hence a liability for any part of the twenty-three per cent was contingent and uncertain in its nature." (228 Ill. App. 1, 5.)

The court stated that, assuming the accounts were reasonably good, a future indebtedness was probable, but at the time of filing the garnishment answer it was not capable of ascertainment or computation and hence was contingent. The court then noted the long standing rule that if a liability is contingent, it is not subject to garnishment. Accord, *Morphet v. Morphet* (1958), 19 Ill. App. 2d 304, 152 N.E.2d 492; *Town & Country Bank v. James M. Canfield Contracting Co.* (1977), 55 Ill. App. 3d 91, 370 N.E.2d 630.

■■ Plaintiffs do not seriously dispute this rule, but rather claim that contingency is a matter of fact to be determined by the trial court whose judgment should not be overturned unless manifestly erroneous. They cite *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518, for the proposition that if there be "any evidence" upon which to support the trial court, an appellate court may not interfere. While the *Brown* court did use the term "any evidence" in the course of its opinion, it concluded by saying, "[T]his court will not substitute its judgment as to the credibility of witnesses for that of the trial court, and will not disturb the findings unless they are *manifestly against the weight of the evidence.*" (Emphasis added.) (18 Ill. 2d 94, 102, 163 N.E.2d 518, 523.) We conclude that the standard remains that of manifest weight.

■■ In analyzing the evidence, plaintiffs draw attention to *National Home, Inc. v. American National Bank & Trust Co.* (1958), 16 Ill. App. 2d 111, 147 N.E.2d 412, and argue that the significance of that case, although it held the liability to be contingent relying on *Pressed Steel*, was the large quantum of evidence produced. We do not agree. The opinion indicates that the case was tried upon the garnishment answers and certain agreed facts and without hearing evidence. In the instant case, the record indicates that the trial court stated, and counsel agreed, that neither party would have any evidence to produce other than the testimony of the Bank official. The quantity of evidence, as distinct from its quality, is seldom significant in any litigation. Evidence, and its preponderance, is to be determined from its value and weight, not from the mere number of witnesses and exhibits on one side or the other. (*Ridgway v. Crum* (1951), 343 Ill. App. 12, 98 N.E.2d 394.) Even if quantity were a factor, plaintiffs

are bound in the instant case by their assent to the production of one witness for the entire case.

It is undisputed, as plaintiffs argue, that the reserve account here represented Rhodus' profits, that it was held in Rhodus' name, and that no corporate resolution existed for its establishment or disposition. However, it is also undisputed that from 1969 until its dissolution in 1980, Rhodus was supplied with statements, knew of the existence of the account and its purpose, and never raised any questions or objections. Authority may be manifested in many ways, one of which is ratification by silence. We find instructive the language in *Freeport Journal-Standard Publishing Co. v. Frederic W. Ziv Co.* (1952), 345 Ill. App. 337, 103 N.E.2d 153:

> "Silence under such circumstances that, according to the ordinary experiences and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which ratification can be found." 345 Ill. App. 337, 350, 103 N.E.2d 153, 158-59.

■■ We believe that the facts here establish a clear ratification of the nature of the reserve account by Rhodus.

■■ Undoubtedly the case would be much clearer if there had been a written agreement concerning the reserve account. However, its absence is not fatal. The Bank official testified fully and completely as to the purpose of the account and how it was handled mechanically. This testimony was uncontradicted. A reviewing court may not presume that there were aspects of a witness' uncontradicted testimony, not apparent in the record, which would justify the trial court in disregarding that testimony. (*People v. Patterson* (1980), 88 Ill. App. 3d 144, 410 N.E.2d 223.) In the instant case the trial court's result can be reached only by disregarding the Bank official's testimony regarding the reserve account.

■■ In sum, we hold that the Bank proved its affirmative defense of contingency and the reserve account was not subject to garnishment.

Plaintiffs make a final argument that the matter of contingency was not raised in the trial court and hence cannot be raised on appeal. We disagree. It is true that in its garnishment answers to interrogatories the Bank did not use the term "contingency" specifically. It spoke rather of "offset." However, the answers describe in detail the operation of the reserve account and its potential ultimate disposition. The label may be missing but the contents are clear. The argument is without merit.

The order of the circuit court of McLean County is reversed.

Reversed.

LONDRIGAN and TRAPP, JJ., concur.