NOTICE
Decision filed 11/03/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200109-U

NO. 5-20-0109

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CAPITAL ONE BANK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 19-SC-2368 |
| | ) | |
| ANTWAN WHITE, | ) | Honorable |
| | ) | Jeffrey K. Watson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The trial court's judgment for plaintiff in a small claims action is affirmed where no argument regarding either the competency of a witness or the witness's standing was proffered at trial and the trial court's finding that defendant's debt remained unpaid was not against the manifest weight of the evidence.

¶ 2  Defendant, Antwan White, appeals the trial court's judgment in favor of Capital One Bank, contending the trial court erred by (1) allowing plaintiff's witness to testify, (2) finding the witness was a real party in interest, and (3) finding that defendant's debt was not paid. For the following reasons, we affirm.

¶ 3                               I. BACKGROUND

¶ 4  On August 27, 2019, plaintiff, Capital One Bank, filed a small claims suit against defendant, Antwan White, alleging that White failed to make the minimum payments on his line

1

of credit. The complaint alleged that $2772.72 remained due and owing and requested a judgment in that amount plus court costs. On October 21, 2019, White entered a *pro se* appearance, denied liability, and requested a trial.

¶ 5 A bench trial was held on February 25, 2020. The trial court read, explained, and invoked Illinois Supreme Court Rule 286(b) (eff. Aug. 1, 1992). Thereafter, Capital One Bank called Kayla Campbell to testify. Campbell testified regarding her employment at Capital One Bank as a litigation specialist and her job responsibilities, and she confirmed she was assigned to and familiar with White's account. Campbell's testimony revealed that White's customer agreement required him to pay a minimum amount each month, White's account was in default because he failed to pay the minimum amount, and White requested closure of the account between March 2018 and April 5, 2018. At that time, the balance due was $2383.39, and the minimum payment was $169. The May 6-June 5, 2018, statement had a minimum payment of $372, and White issued a payment of $25. No payments were issued from September 6 to October 5, 2018. The full balance of $2772.72 was due at the time and that was the charge off amount.

¶ 6 Campbell testified that on January 10, 2019, White submitted a check to Capital One Bank in the amount of $5303.98, which was returned, "or bounced, in layman's terms." The drawer on the check was "private banker executor Antwan M. White, Family of White, Illinois State." Campbell stated that the check was unusual because it was for twice the amount due, that it did not appear to be drawn on a bank, and she had never seen a check like that one before. After the check bounced, White had a balance of $2772.72 that remained outstanding. Campbell identified the customer agreement (plaintiff's exhibit A), White's billing statements (plaintiff's exhibit B), and the check provided by White purporting to pay off the balance on the card (plaintiff's exhibit D). Exhibits A and B were admitted over White's hearsay objections after the trial court found that

plaintiff's counsel properly laid the foundation for a business record exception. The transcript does not indicate if plaintiff submitted exhibit D at the hearing.

¶ 7    On cross-examination, Campbell stated that she knew the check was returned because the notes she reviewed stated the check was returned and the transactional history showed that the $2772.72 remained due. She stated the check would not have been reflected on any statements because statements were not issued after an account was charged off. She did not know if it was common practice for Capital One to notify someone, at the address on file, if their check was returned; however, she confirmed that letters were sent to White regarding the balance remaining due after the check was returned.

¶ 8    White also testified and stated that he had no issue paying Capital One Bank but claimed the debt collector, Blitt & Gaines, did not have standing to collect his charge off. The court advised White that Blitt & Gaines was the law firm representing Capital One Bank and further advised White that corporations had to be represented by counsel for litigation.

¶ 9    White then submitted an email from Capital One Bank indicating that his balance for the account at issue was paid in full. He stated that he did not receive anything contradicting the email, so he believed the account was paid. He further stated that it was not until he received the letter from Blitt & Gaines that he was advised that a balance remained due. He believed the law firm was double dipping since he paid the amount due. When the court asked White why his January 2019 payment was for twice the amount due, White replied that according to "USC 31," he sent instructions to Capital One Bank on processing the instrument and section 31 allowed Capital One Bank to apply the rest of the payment toward the national debt to help the government.

¶ 10    On cross-examination, White was asked where he got the check that was sent to Capital One Bank. White objected stating the question was irrelevant. The court stated the question was

3

very relevant because the check was the basis of White's defense that he did not owe Capital One Bank money. White explained that the check was "an international bill of exchange." He explained that an international bill of exchange was a negotiable instrument and according to the Uniform Commercial Code (810 ILCS 5/3-603(b) (West 2018)) he tendered payment to Capital One Bank, and it was common practice that when payment was tendered that it would set off the obligation of the debt. White was again asked where he got the check and White stated that he "created it with his energy." He stated that he studied the Uniform Commercial Code, articles 3, 9, 5 and 7, and studied the UNTRAL convention on international bill of exchanges and promissory notes which gave instructions on how to produce a negotiable instrument. Thereafter, White stated that he typed the check out on Word or Open Office and agreed that he created the check. White stated that the account numbers on the check were the registered mail numbers that he sent to his fiduciary, Steven Mnuchin. He agreed that Mr. Mnuchin was the Treasurer of the United States. White stated that he filed it with IRS Form 56.

¶ 11    White admitted that he used the credit card issued to him by Capital One Bank and that he eventually failed to make the required minimum payments on the account. He did not agree that his tendered negotiable instrument was rejected because he did not know that it was rejected. He stated that he tendered payment to Capital One Bank and the payment was accepted by Capital One Bank. He agreed that he wanted the difference to go to the U.S. national debt. White disagreed that if he paid with a check that he made at home, the money would still be due, because that was contrary to the Uniform Commercial Code. White also stated that Capital One Bank's counsel could make a check on his home computer, like he did, and use that check to pay his rent.

¶ 12    Following the hearing, the trial court issued an order finding in favor of Capital One Bank and against White. The court entered judgment in the amount of $2772.72 plus court costs, for a total of $3078.72. White timely appealed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, White, who remains *pro se*, argues that (1) the trial court erred in allowing Campbell to testify, (2) the trial court erred in finding that Campbell was a real party in interest, and (3) the trial court's finding that the alleged debt was not paid was erroneous.

¶ 15    It is clear from the record that the trial court was proceeding pursuant to the rules for small claims by invoking Illinois Supreme Court Rule 286 (eff. Aug. 1, 1992). Rule 286(b) states:

> "In any small claims case, the court may, on its own motion or on motion of any party, adjudicate the dispute at an informal hearing. At the informal hearing all relevant evidence shall be admissible and the court may relax the rules of procedure and the rules of evidence. The court may call any person present at the hearing to testify and may conduct or participate in direct and cross-examination of any witness or party. At the conclusion of the hearing the court shall render judgment and explain the reasons therefor to all parties." Ill. S. Ct. R. 286(b) (eff. Aug. 1, 1992).

¶ 16    While the rules governing small claims actions are intended to provide an expeditious, simplified, and inexpensive procedure for handling small claims, other practice rules, as well as the provisions of the Code, "are applicable to small claims proceedings if consistent with the aims of the small claims rules." *Harmon Insurance Agency, Inc. v. Thorson*, 226 Ill. App. 3d 1050, 1052 (1992).

¶ 17                                    Allowance of Witness Testimony

¶ 18    On appeal, White argues that the trial court erred in allowing Campbell to testify because Campbell was unqualified to testify as to the validity and veracity of his negotiable instrument. However, the record reveals that White never objected to Campbell's testimony or argued to the trial court that Campbell was not competent or qualified to provide testimony. It is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Because White failed to raise this issue with the trial court, we find the issue was forfeited.

¶ 19                                         Witness Standing

¶ 20    White also argues that the trial court erred in allowing Campbell to testify because she was not a real party in interest. White claims that Campbell is not Capital One Bank and therefore had no firsthand knowledge of anything pertaining to his case. However, again the record reveals no objection or argument by White before the trial court as to Campbell's standing or whether she was a "real party in interest" in this case. As noted above, issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Id.* As such, we find that White forfeited this issue.

¶ 21                                 White's Alleged Payment of the Debt

¶ 22    Finally, White argues that the trial court erred in finding that the alleged debt was not met and issuing judgment in favor of Capital One Bank. We review a trial court's judgment under the manifest weight of the evidence standard. *Jackson v. Bowers*, 314 Ill. App. 3d 813, 818 (2000). "A judgment is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence

6

presented." (Internal quotation marks omitted.) *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 142.

¶ 23    Here, White claims the trial court's decision was against the manifest weight of the evidence because he issued a valid negotiable instrument. However, the negotiable instrument at issue is not contained within the record on appeal.[1] It is axiomatic that a decision cannot be reversed where the record fails to contain the evidence at issue on appeal. Appellant had the burden to present a sufficiently complete record of the proceedings at trial to support his claim of error, and in the absence of same, "it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against appellant." *Id*.

¶ 24    Without the exhibit, our review is limited to the testimony provided by White and Campbell regarding the legitimacy of the negotiable instrument. White's testimony revealed that he created the check using his "energy" on his home computer and the account numbers found on the check were the registered mail numbers that White sent to Steven Mnuchin, who acted as both the United States Secretary of the Treasury and White's personal fiduciary. This testimony was contradicted by Campbell's testimony that revealed that Capital One Bank deposited White's negotiable instrument, but the check was returned, which in layman's terms meant the check "bounced."

¶ 25    "The trial judge, when sitting as the trier of fact in a bench trial, makes findings of fact and weighs all of the evidence in reaching a conclusion." *Staes & Scallan, P.C. v. Orlich*, 2012 IL App

---

[1]The negotiable instrument was labeled as exhibit D. The exhibits submitted to this court consisted of 12 pages; however, the cover page indicated that the exhibits were contained in three volumes and consisted of a total of 137 pages. While exhibit D is listed (pages 133-137 Volume 3), the document is not contained within the 12 pages submitted to this court.

(1st) 112974, ¶ 35. Regarding factual issues, "a trial court's credibility decision is subject to great deference in a bench trial." *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 548 (2007). We will not substitute our judgment for that of the circuit court "because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses." *Id*. We will not disturb the judgment of the trier of fact "if there is any evidence in the record to support such findings." *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959).

¶ 26    Here, although no factual findings were provided in the trial court's order, the judgment in favor of Capital One Bank, and against White, indirectly reveals that the trial court found Campbell's testimony more compelling than White's testimony as to whether White's debt was satisfied by his negotiable instrument. Based on the testimony provided, we find that an opposite conclusion is not clearly evident and sufficient evidence appears in the record to support the trial court's decision. As such, we affirm the trial court's judgment.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated herein, we affirm the trial court's judgment in favor of Capital One Bank and against Antwan White.


¶ 29    Affirmed.