March 9, 1999

NO. 5-98-0405

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

ROBERT HANKS,                        )  Appeal from the

                                     )  Circuit Court of

     Plaintiff-Appellee,             )  St. Clair County.  

                                     )  

v.                                   )  No. 97-L-117A

                                     )  

LUHR BROTHERS, INC.,                 )  Honorable

                                     )  Robert P. LeChien, 

     Defendant-Appellant.            )  Judge, presiding.  

_________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

Any seaman hurt on the job can sue for damages and, at his election, have a jury decide the outcome.  46 U.S.C. §688 (1994).  When Congress passed the Jones Act, it made trial by jury a matter for the seaman to decide.  Congress wanted the seaman's employer to abide by that decision.  
Allen v. Norman Brothers, Inc.
, 286 Ill. App. 3d 1091, 678 N.E.2d 317 (1997).

Here, a Jones Act plaintiff wanted the judge rather than a jury to decide his case.  Luhr Brothers, Inc. (Luhr), wanted a jury to decide it.  The judge struck Luhr's jury demand and heard the case.  He found for plaintiff and awarded $901,091.32.

Luhr appeals from the trial court's December 16, 1997, order denying its motion for trial by jury and from the March 9, 1998, judgment for plaintiff.  We affirm.

Plaintiff, Robert Hanks, worked for Luhr as a deckhand on Luhr's river towboat, the MV Michael A.  Early in the morning of January 31, 1996, the towboat's steering ram broke while the boat was operating on the Vermilion River in Louisiana in heavy winds.  Plaintiff and one other deckhand, with the assistance of the towboat's captain, changed the ram.  The rams operate on hydraulic fluid under pressure.  The rams are located on the towboat's stern under removal grates that rest upon a metal framework.  The grates are situated 10 to 14 inches above the towboat's deck.  A channel running the full length of the deck exists for the purpose of keeping fluids from spilling out onto the deck from the grate area.

When the ram was changed, the hydraulic lines feeding the ram's cylinder had to be disconnected and bled to remove pressure.  Some hydraulic fluid escaped during this repair, which was normal.  Plaintiff acknowledged that trying to keep the hydraulic fluid off of the deck was within his job duties.  The captain characterized the fluid loss in this case as minimal.  Plaintiff testified that he contained the spillage at the ram but that some fluid may have spilled onto the grates or onto rigging resting on the grates.

After the ram was changed, the captain ordered plaintiff to clean the grates and deck.  Plaintiff sprinkled soap powder into the grate area and began to hose down the area.  In an area 10 to 14 inches from the grates, plaintiff's left foot slipped out from under him, and he fell, landing on his buttocks and striking his head on the deck.  In attempting to get up, he slipped and fell again.

Plaintiff does not know whether or not he slipped on hydraulic fluid.  He saw no fluid on the deck, and after he fell, he found none on his shoes.  Plaintiff testified that the deck was wet from wind-driven waves.

The area of the deck where he fell had been painted just two weeks prior to the accident.  No nonskid additive was available on the towboat when the painting was done, and so the deck was painted without the additive.  In the past, the nonskid additive was always added to the paint.  Plaintiff testified that in the two weeks before this accident, he and other crew members complained to the captain and the pilot that the freshly painted area of the deck in question was slick.  Despite their complaints, no corrective action was taken.

Plaintiff sustained a low-back injury in the form of a ruptured disc in this accident.  In July 1996, plaintiff underwent a lumber discectomy.  His orthopedic surgeon testified that by November 1996 plaintiff had reached maximum medical improvement.  Plaintiff was given a return to duty without restriction in January 1997.  The surgeon testified that plaintiff could not perform heavy industrial work but could return to a medium level of physical work.

Plaintiff had a history of two low-back injuries while in the United States Marine Corps, the second of which was in December 1991.  In April 1993, plaintiff was examined by a Veterans Administration physician pursuant to some application for compensation or pension.  Plaintiff told this physician that he had experienced constant low-back pain for the preceding 18 months with numbness in the upper parts of his leg down to his knees.  However, upon examination, this physician found no neurological or musculoskeletal deficiencies or abnormalities.

Plaintiff's surgeon opined that the January 1996 accident either exacerbated a preexisting herniation or caused the herniation.  After being informed of plaintiff's past medical history, plaintiff's surgeon testified that he believed that the disc was most likely bulging or ruptured prior to January 1996, although plaintiff had no symptoms suggestive of sciatica.  In concluding, the surgeon testified that whatever the state of plaintiff's back prior to the January 1996 accident, something happened in the January 1996 accident that resulted in plaintiff's increased symptoms.

Plaintiff had been employed as a deckhand for 22 months before the fall.  His annual income was $25,914.

Plaintiff filed suit against Luhr in state court, alleging claims under the Jones Act, under general maritime law, and for maintenance and cure.  He sought damages for the injuries he sustained as a result of his January 1996 fall.  Luhr demanded a trial by jury.  Luhr also filed an answer asserting contributory fault with respect to the Jones Act and maritime law claims.

On plaintiff's motion, the trial court struck Luhr's jury demand on June 3, 1997.  Later, Luhr filed a motion seeking a trial by jury, with a supporting memorandum of law.  The trial court denied Luhr's motion on December 16, 1997.  The case proceeded to a bench trial on January 26 and 27, 1998.  A judgment was entered in plaintiff's favor on March 9, 1998, in the amount of $901,091.32, plus court costs.  Luhr filed a posttrial motion, which the trial court denied on June 1, 1998.

I.  
JURY DEMAND

Luhr initially appeals from the trial court's order striking defendant's jury demand.  As the issue involves a review of federal statutory and constitutional law, we review 
de novo
 the trial court's order striking Luhr's jury demand.  

Illinois Constitution--Jones Act

State and federal courts have concurrent jurisdiction over a Jones Act (46 U.S.C. §688 (1994)) claim.  
Allen v. Norman Brothers, Inc.
, 286 Ill. Ap. 3d 1091, 1094, 678 N.E.2d 317, 319 (1997), citing 45 U.S.C. §56 (1988).  Under the Jones Act, only the plaintiff can elect to have the case heard by a jury.  
Allen
, 286 Ill. App. 3d at 1094-95, 678 N.E.2d at 319-20, citing
 Rachal v. Ingram Corp.
, 795 F.2d 1210, 1213 (5th Cir. 1986); 
Craig v. Atlantic Richfield Co.
, 19 F.3d 472, 476 (9th Cir. 1994).

The Illinois Constitution guarantees the right to a jury trial if the claim existed at common law.  
Allen
, 286 Ill. App. 3d at 1095, 678 N.E.2d at 320, citing 
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 72, 643 N.E.2d 734, 753 (1994).  The Jones Act did not exist at common law.  
Allen
, 286 Ill. App. 3d at 1094, 678 N.E.2d at 319.  Therefore, as we previously and unambiguously stated, Jones Act defendants have no right to a jury trial in Illinois state courts.  
Allen
, 286 Ill. App. 3d at 1096, 678 N.E.2d at 320-21.

Illinois Constitution--General Maritime Claims

State courts have jurisdiction over general maritime claims  because of the savings-to-suitors clause of section 1333 of the Judiciary Act (28 U.S.C. §1333 (1994)).  That section provides that the United States district courts shall have original jurisdiction, exclusive of the courts of the states, of all civil cases of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Plaintiff's unseaworthiness and maintenance-and-cure claims are considered admiralty claims to which no jury trial right attaches.  
Allen
, 286 Ill. App. 3d at 1096, 678 N.E.2d at 321, citing 
Fitzgerald v. United States Lines Co.
, 374 U.S. 16, 17, 10 L. Ed. 2d 720, 722, 83 S. Ct. 1646, 1648 (1963).  Luhr cites numerous old cases that predate the enactment of the Jones Act in which the injured seamen received jury trials.  None of the cited cases mention who demanded the jury trial.  Furthermore, the states involved in the cited cases may have constitutional provisions that allow for jury trials in all cases.  The vast majority of the cases cited involve common law negligence and not traditional admiralty claims.  One of the cases was in federal court on a diversity basis, and because of the diversity, the seventh amendment became applicable, providing defendant a jury trial right.  U.S. Const. amend. VII.  In short, nothing in these cases stands for the proposition that the defendant has a jury trial right in a traditional admiralty case heard in Illinois state court.

Jones Act--Contributory Negligence Claim

Luhr contends that section 53 of the Federal Employers' Liability Act (FELA) (45 U.S.C. §53 (1994)), as incorporated into the Jones Act (46 U.S.C. §688 (1994)), provides a defendant with a right to a jury trial with respect to the defendant's contributory negligence claim.

This issue is controlled by a recent opinion handed down by this court.  Applying our recent case law, we find that the reference to a jury within section 53 of the FELA confers no right upon a defendant to demand a jury in a Jones Act case.  
Gibbs v. Lewis & Clark Marine, Inc.
, 298 Ill. App. 3d 743, 750, 700 N.E.2d 227, 232 (1998).  As previously stated, any such construction "would contravene the plaintiff's expressly articulated right to elect a jury trial or nonjury trial in such cases."  
Gibbs
, 298 Ill. App. 3d at 750, 700 N.E.2d at 232.

Equal Protection

Next, we are asked to decide whether the trial judge's rejection of Luhr's call for a trial by jury constituted a deprivation of Luhr's right to the equal protection of the law.  We hold that it did not. 

The fourteenth amendment reads in pertinent part, "No State shall *** deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV.  This right extends to corporations as well as natural persons.  
Power Manufacturing Co. v. Saunders
, 274 U.S. 490, 493, 71 L. Ed. 1165,  47 S. Ct. 678, 679 (1927).

The phrase "equal protection of the laws" found its way into our federal constitution in response to a southern brand of justice immediately following the civil war.  Freedmen stood without the protection of the southern states' criminal laws.  KluKluxery prevailed throughout southern states, where its crimes against black victims went unattended.  Thus came passage of the Ku Klux Klan constitutional amendments and enabling legislation designed to assure that 
states
 provided "equal protection of the laws."  See R. Kennedy, Race, Crime & the Law (1997).

The genesis of this constitutional provision reminds us that the fourteenth amendment "was intended to regulate only conduct by the States or their instrumentalities."  
Shelley v. Kraemer
, 334 U.S. 1, 13, 92 L. Ed. 1161, 1180, 68 S. Ct. 836, 842 (1948).  At oral argument, Luhr insisted that its claim rests upon the equal protection clause of the fourteenth amendment and not the due process clause of the fifth amendment (U.S. Const., amend. V).  Thus, to prevail, Luhr must demonstrate state action.

Luhr points out that actions by state judicial officers can constitute state action.  See 
Shelley
, 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836.  It argues that the judge's interpretation of the Jones Act, not the federal statute itself, was the source of the equal protection violation.  Luhr thus concludes that striking its jury demand constituted the state action necessary to invoke the fourteenth amendment's constitutional protection. 

Although we question whether a state court's interpretation of federal law could ever trigger the equal protection clause, we are quite certain that it did not trigger it in this case.  The right to a trial by jury in a case brought under the Jones Act is a substantive matter governed by federal law.  
Allen v. Norman Brothers, Inc.
, 286 Ill. App. 3d 1091, 1096, 678 N.E.2d 317, 321 (1997), citing 
Dice v. Akron, Canton & Youngstown R. Co.
, 342 U.S. 359, 363, 96 L. Ed. 398, 404, 72 S. Ct. 312, 315 (1952).  The judge's interpretation and subsequent application of that federal law to strike Luhr's jury demand were correct.  Following clear federal precedent, we have repeatedly held that a Jones Act defendant has no right to a trial by jury.  See 
Allen
, 286 Ill. App. 3d 1091, 678 N.E.2d 317; 
Gibbs v. Lewis & Clark Marine, Inc.
, 298 Ill. App. 3d 743, 700 N.E.2d 227 (1998).

Since the trial judge merely executed a congressional intent to allow plaintiff the exclusive right to elect a trial by jury and the judge struck a jury demand that Congress did not contemplate, the true source of the alleged disparate treatment was the federal statute itself.  Congress conferred on plaintiff the exclusive right to trial by jury, and Congress was not obliged to abide by fourteenth amendment constraints when it did so.  Luhr's concerns over the disparate treatment of parties under the Jones Act are directed at federal rather than state action.  The constitutional redress of those concerns rests, if at all, within the constraints imposed upon the federal government under the due process clause of the fifth amendment.

In the absence of state action necessary to precipitate fourteenth amendment guarantees, an equal protection claim cannot be validly raised.  Since there was no state action to offend the equal protection clause, its imperative was not violated in this case. 

II.  
JUDGMENT IN PLAINTIFF'S FAVOR

Luhr next contends that the trial court erred in entering judgment in plaintiff's favor.  Specifically, Luhr argues that there was no credible evidence that plaintiff slipped on a combination of hydraulic fluids, detergent, and river water.

A trial court's ruling in a bench trial will not be overturned unless that ruling is contrary to the manifest weight of the evidence.  
Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.
, 251 Ill. App. 3d 17, 29, 620 N.E.2d 1349, 1357 (1993), 
aff'd
, 162 Ill. 2d 99, 642 N.E.2d 470 (1994).

No one saw plaintiff fall.  In answer to Luhr's interrogatories, plaintiff claimed that after he finished his work and stepped down from the steel grating covering the steering machinery, the deck felt greasy.  He further claimed that the deck was unsafe and unseaworthy because it was slick due to a combination of the slick liquid on the deck and the lack of nonskid deck covering.  At trial, plaintiff and his captain testified that the release of hydraulic pressure was normal.  Some hydraulic fluid could have spilled out onto the steel grating, requiring cleaning.  Plaintiff did not recall seeing hydraulic fluid in the area in which he fell, and there was none on the bottom of his shoes after the fall.  Testimony at trial established that the deck was awash with river water.

The trial court concluded that Luhr was negligent "for its failure to supply a non-skid surface on the deck since such a surface was reasonably necessary to permit its employees to work in safety."  Furthermore, the trial court found:  "The slick condition of the deck caused [plaintiff] to fall.  The soapy, slick fluid coating the deck was a component of and incidental to the repair operation necessary to get the boat underway.  The failure of the employer to apply a non-skid surface was a proximate cause of the unsafe condition of the deck upon which [plaintiff] was required to work."

Under the Jones Act, the employer is imposed with a nondelegable duty to furnish its employees with a safe work place.  46 U.S.C. §688 (1994).  There is no dispute that the deck of this vessel was not coated with a nonskid surface and that, at a minimum, water was present on the deck's surface.  The evidence of the failure to furnish a nonskid surface is sufficient to submit negligence and unseaworthiness theories to the court.  See 
Borgen v. Richfield Oil Corp.
, 257 F.2d 505, 507 (9th Cir. 1958).

Given the lack of a nonskid surface and the presence of water on the deck of this vessel, we find that a conclusion opposite to that reached by the trial court is not clearly evident.  Accordingly, we find that the judgment of the trial court should be upheld.

III.  
DAMAGES AWARD

Luhr next charges that the trial court's damages award was not consistent with or supported by the evidence.  The trial court's March 9, 1998, judgment was itemized as follows:

Pain and Suffering $300,000.00

Disability $200,000.00

Loss of Earnings $390,000.00

Medical Expense $ 11,091.32

With respect to the award for pain and suffering and disability, Luhr contends that since plaintiff's surgeon could not causally connect plaintiff's injury to this accident, the awards are not supported by the evidence.  If the surgeon's testimony was what Luhr purports it to be, then Luhr might have a valid point.  However, plaintiff's surgeon did causally connect the injury to this accident by way of an aggravation, stating:

"[Plaintiff] could have had chronic low back pain and continued working and then had an injury and increased the size of the disc rupture, or he may have had discogenic pain without a disc rupture, or he could have had a disc rupture that bothered him and then was aggravated by his accident and caused to be more symptomatic than his prior complaints."

In addition to this surgeon's testimony, the trial court was able to consider the fact that while plaintiff may have had a history of back pain, he had worked at his Luhr heavy-labor job for almost two years without incident.

We find that the awards for pain and suffering and disability are adequately supported by the record and that the trial court's decision is not contrary to the manifest weight of the evidence.

Luhr also argues that the loss-of-earnings and disability awards are excessive.  Each party presented expert testimony.  Luhr's argument is essentially that the trial court should have disregarded plaintiff's experts in favor of Luhr's experts.

The trial court heard the testimony of the witnesses.  Obviously, the testimony was conflicting.  We will not second-guess the trial court's decision when testimony was given that supports the court's decision.  Accordingly, we find that the trial court's awards were not contrary to the manifest weight of the evidence.

IV.  
CONTRIBUTORY NEGLIGENCE

Luhr finally contends that the trial court erred in concluding that plaintiff was not contributorily negligent.  Specifically, Luhr believes that plaintiff must be charged with the knowledge that hydraulic fluid or slick components might accumulate on the deck.  Luhr's argument is premised largely upon the idea that plaintiff admitted responsibility for keeping hydraulic fluid from spilling onto the deck.  

A Jones Act seaman bears the duty to act with ordinary prudence under the circumstances.  
Gautreaux v. Scurlock Marine, Inc.
, 107 F.3d 331, 339 (5th Cir. 1997).  In this case, the steering ram required repair.  The hydraulic line associated therewith was under pressure and had to be opened as a part of the steering ram's repair.  Plaintiff's deckhand coworker testified that some of the hydraulic fluid spills out onto the deck during this procedure.  The captain testified that hydraulic fluid sprays out when a line under pressure is opened.  Plaintiff merely testified that he, as a deckhand, would attempt to contain the hydraulic fluid.  The day of the accident was particularly windy.  In this case, there was apparently a mess on the deck after the repair was completed, as the captain ordered the deckhands to soap down the deck.  There was testimony that once the soap and water solution was utilized, the hydraulic fluid could no longer be visualized on the deck's surface.

Given these facts, we believe that the trial court's order finding that plaintiff was not contributorily negligent is consistent with the evidence.

Accordingly, for the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

Affirmed.

WELCH and HOPKINS, JJ., concur.