M&O INSULATION COMPANY, Plaintiff-Appellant, v. HARRIS BANK NAPERVILLE, Defendant and Third-Party Plaintiff-Appellee (Quality Insulation Company, Inc., *et al.*, Third-Party Defendants).

Second District No. 2—01—0181

Opinion filed December 31, 2002.

Raymond E. Stachnik, of Connelly, Roberts & McGivney, of Chicago, for appellant.

Ronald J. Broida and Jeffrey A. Tullis, both of Broida & Tullis, of Naperville, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, M&O Insulation Company (M&O), appeals the trial court's judgment in favor of defendant, Harris Bank Naperville (Harris Bank), after Harris Bank refused to honor a check issued to M&O from third-party defendant Quality Insulation Company, Inc. (Quality). We affirm.

The following facts are taken from the record. M&O is an insulation contractor that was subcontracted by Quality in July 1997 to install insulation at the Nabisco Chicago Bakery for a price of $76,000.

On May 5, 1995, Harris Bank extended a line of credit through a promissory note to Quality in the sum of $250,000. Pursuant to the promissory note, Harris Bank had a possessory security interest in the general deposit account opened by Quality at Harris Bank. The promissory note provided that, upon default, Harris Bank could declare the balance of the line of credit immediately due and payable and Harris Bank could exercise a setoff against Quality's general deposit account.

On June 14, 1995, Quality opened a checking account at Harris Bank and agreed to follow Harris Bank's terms and conditions governing the account, which, in part, gave Harris Bank the right to set off money on deposit against any matured indebtedness to Harris Bank.

On several occasions, Quality failed to honor the payment schedules and Harris Bank granted Quality extensions. The last extension Harris Bank granted was on July 28, 1997, with a change in the terms of the agreement that extended the maturity date of the loan to October 31, 1997, with the condition that Quality strictly comply with the payment schedule. The agreement contained the same default provisions as the promissory note and reiterated Harris Bank's possessory security interest in Quality's bank accounts and Harris Bank's right to freeze Quality's accounts and exercise a setoff. The agreement contained a new payment schedule and provided that on the date of maturity, October 31, 1997, Quality would pay Harris Bank $238,000 plus interest.

On September 17, 1997, Quality deposited $77,200 into its Harris Bank checking account. The deposit was comprised of the funds Quality received for the M&O insulation work at Nabisco.

Quality failed to comply with the new payment schedule, and on September 18, 1997, Harris Bank deemed itself insecure, declared Quality in default, and declared the balance of the loan immediately due and payable.

Also on September 18, 1997, Arthur Gneuh, a Harris Bank loan officer, met with Kent and Barbara Duffy of Quality. According to Gneuh's notes, the Duffys agreed to pay down the debt and reduce the credit line by $10,000 by September 23, 1997, and another $10,000 by October 5, 1997, with the entire amount to be paid by October 31, 1997. This meeting resulted in a commercial loan workout and settlement agreement.

On September 23, 1997, Quality delivered a check to M&O for $76,000 as payment for M&O's work at Nabisco. On the same day, M&O deposited Quality's check into M&O's bank, LaSalle, N.A., of Chicago.

On September 24, 1997, Quality deposited $112,000 into its Harris Bank checking account. On the same day, Harris Bank placed an administrative hold or freeze on Quality's checking account and exercised a $10,000 setoff against Quality's account. According to Gneuh's notes, he left a message with Quality regarding the hold on the account. Later, on September 24, a $76,000 check issued to M&O was presented to Harris Bank for payment on Quality's account.

The following day, September 25, 1997, Quality's account statement showed a balance sufficient to pay the M&O check. However, before 11:59 p.m., Harris Bank returned the $76,000 check issued to M&O as dishonored for insufficient funds. Subsequently, Harris Bank honored two "forced" checks in the amounts of $10,000 and $2,276.04. In a forced check situation, Harris Bank reviews the check and decides whether to pay it.

On September 26, Harris Bank debited Quality's account as a setoff against the outstanding loan in the amount of $90,000. On September 26, 1997, Harris Bank again honored other "forced" checks in the amounts of $4,835.58, $4,455.99, $1,605.12, $468.66, and $70.

On September 29, 1997, the M&O check was again presented to defendant for payment. The following day, September 30, 1997, before 11:59 p.m., Harris Bank returned the dishonored check for insufficient funds. M&O recovered $22,000 from Quality and filed suit against Harris Bank to collect the rest of the funds.

On March 3, 1999, M&O filed its second amended complaint alleging fraud (count I) and negligent misrepresentation (count II). On

April 22, 1999, the trial court struck M&O's claim for negligent misrepresentation. M&O amended its second amended complaint, realleging negligent misrepresentation.

On July 25, 1999, the trial court denied Harris Bank's motion for summary judgment.

A bench trial commenced on September 7, 2000. M&O filed its second amended complaint as amended, adding two counts, alleging violation of section 4—303 of the Uniform Commercial Code—Bank Deposits and Collections (Code) (810 ILCS 5/4—303 (West 1998)) (count III) and unjust enrichment (count IV).

At the close of M&O's case in chief, Harris Bank moved for a directed finding on all four claims. Counts I and II (fraud and negligent misrepresentation, respectively) were voluntarily dismissed with prejudice.

On November 21, 1999, the trial court granted Harris Bank's motion to dismiss as to count IV (unjust enrichment). On January 9, 2001, after the parties submitted memoranda, the trial court entered judgment in favor of Harris Bank on the remaining count III (breach of statutory duty).

M&O argues that the trial court erred by entering judgment in Harris Bank's favor on count III, breach of statutory duty under section 4—303(a)(5) of the Code. M&O argues that the trial court erroneously found that the Code did not apply to this case because the check was not honored by Harris Bank.

■ In reviewing a bench trial, we defer to the trial court's factual findings unless they are against the manifest weight of the evidence. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 599 (2000). A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126, 135 (2001). However, we review a question of law *de novo*. *Hendricks v. Riverway Harbor Service St. Louis, Inc.*, 314 Ill. App. 3d 800 (2000).

■ In interpreting statutory language, we must give effect to the intent of the legislature. *Stokes v. Colonial Penn Insurance Co.*, 313 Ill. App. 3d 202, 204 (2000). The best indication of the legislature's intent is the language of the statute in question, and we must give clear and unambiguous terms their plain and ordinary meaning. *Stokes*, 313 Ill. App. 3d at 204. Further, we must read the statute as a whole and in a manner that no term is rendered meaningless or superfluous. *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 257 (2001).

■ Section 4—303 of the Code provides:

"When items subject to notice, stop-payment order, legal process, or setoff; order in which items may be charged or certified.

(a) *Any* knowledge, notice, or stop-payment order received by, legal process served upon, or *setoff exercised by a payor bank comes too late to terminate, suspend, or modify the bank's right or duty to pay an item* or to charge its customer's account for the item *if* the knowledge, notice, stop-payment order, or legal process is received or served and a reasonable time for the bank to act thereon expires or *the setoff is exercised after the earliest of the following*:

\* \* \*

(5) *with respect to checks, a cutoff hour no earlier than one hour after the opening of the next banking day after the banking day on which the bank received the check* and no later than the close of that next banking day or, if no cutoff hour is fixed, the close of the next banking day after the banking day on which the bank received the check." (Emphasis added.) 810 ILCS 5/4—303 (West 1994).

M&O argues that because the check at issue arrived at Harris Bank on September 24 and the setoff was exercised on September 26, the check won the race and Harris Bank had a duty to honor the check. Harris Bank argues, and the trial court determined, that Harris Bank never accepted the check and, therefore, it was never obligated to honor it. We agree with Harris Bank and the trial court.

■ Section 3—408 provides:

"A check or other draft does not of itself operate as an assignment of funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument *until the drawee accepts it*." (Emphasis added.) 810 ILCS 5/3—408 (West 1994).

Under M&O's interpretation, Harris Bank was obligated to honor the check even though it was not accepted by Harris Bank and no step had been taken by Harris Bank to indicate it intended to process the check. Thus, M&O's interpretation of section 4—303(a)(5) renders section 3—408 meaningless. M&O's interpretation makes Harris Bank liable on the instrument even though it never accepted the instrument and returned the instrument unpaid.

■ M&O's assertion that the passage of the cutoff hour constitutes one of the steps of the payment process ignores the plain and ordinary meaning of the word "receive." "Receive" means, *inter alia*, "to accept as true or valid" and "to knowingly accept." Webster's Third New International Dictionary 1894 (1993). Thus, when applying the plain and ordinary meaning to the word "receive" and reading section 4—303(a)(5) in context with section 3—408, a bank must accept a check in order for it to be received within the meaning of the statute. Here, Harris Bank did nothing to accept the check. Rather, it placed a

freeze on the account before the check was presented, indicating that it would not automatically accept a check upon presentment, and then returned the check unpaid. Therefore, we agree with the trial court's interpretation of the statute and determine that it properly found in favor of Harris Bank on count IV of M&O's complaint.

Further, contrary to M&O's assertion, the fact that Harris Bank honored certain checks presented after the account was frozen does not mean that it had to honor M&O's check. Harris Bank had the discretion to accept certain checks and refuse to accept others. Harris Bank became liable for a check only after it accepted it. 810 ILCS 5/3—408 (West 1994).

M&O also argues that the trial court erred by granting Harris Bank's motion for a directed finding in Harris Bank's favor on the unjust enrichment claim.

■ In ruling on a motion for directed finding, the court follows a two-part analysis. *Estate of Price v. Universal Casualty Co.*, 322 Ill. App. 3d 514, 517 (2001). The court first determines whether the plaintiff presented a *prima facie* case; if not, the court enters judgment in favor of the defendant. *Price*, 322 Ill. App. 3d at 517. If the plaintiff has presented a *prima facie* case and there is sufficient proof to satisfy the required burden of proof, the court denies the motion. *Price*, 322 Ill. App. 3d at 517. The trial court's decision under the second part of this analysis will not be disturbed unless it is against the manifest weight of the evidence. *Price*, 322 Ill. App. 3d at 517.

■ To present a *prima facie* case based on a theory of unjust enrichment, a plaintiff must present evidence that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violated fundamental principles of justice, equity, and good conscience. *B&B Land Acquisition, Inc. v. Mandell*, 305 Ill. App. 3d 1068, 1073 (1999).

■ Here, M&O's unjust enrichment claim is an alternative theory of recovery based on an alleged violation of section 4—303(a)(5). Citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 161-62 (1989), M&O contends that Harris Bank received a benefit from M&O through wrongful conduct, *i.e.*, the setoff against the Quality account and the failure to honor the check issued by Quality to M&O. M&O's argument is premised on the claim that Harris Bank's conduct was wrongful because it violated section 4—303(a)(5) of the Code. Because we have determined that Harris Bank did not violate the Code by refusing to honor the check, M&O did not present a *prima facie* case on its claim for unjust enrichment. Accordingly, the trial court properly dismissed the unjust enrichment count.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY and BYRNE, JJ., concur.